UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 10-760 CAS | | Date | July 18, 2013 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | Amanda Bettinelli, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| MARCOS JOSHUA PEREZ | NOT | | X | ANTHONY EAGLIN | NOT | | X |

**Proceedings:** (IN CHAMBERS): ORDER RE: NINTH CIRCUIT REMAND

## I. INTRODUCTION

On July 13, 2010, the government filed an indictment charging defendant Marcos Joshua Perez with (1) possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); and (2) possession with intent to distribute methamphetamine on premises where children are present in violation of 21 U.S.C. § 860(a).

On September 7, 2010 and September 21, 2010, defendant filed motions to suppress evidence seized from his vehicle, statements to police, and evidence seized from his residence. In an order dated January 20, 2011, the Court denied the motions to suppress. Dkt. #53. Subsequently, defendant entered a guilty plea, but reserved the right to appeal the Court's denial of his motions to suppress and to withdraw his guilty plea should he prevail on appeal. Dkt. #54 § 3. On September 13, 2011, defendant was sentenced to 180 months imprisonment and five years supervised release. Dkt. #75.

On September 22, 2011, defendant filed an appeal, and on February 27, 2013, the Ninth Circuit issued an order reversing the Court's decision in part and remanding the case for further proceedings. In its order, the Ninth Circuit found that the search of defendant's vehicle was unlawful, and hence that the photographs and text messages seized during the illegal search of his truck were fruits of the poisonous tree. The Ninth Circuit then remanded the case to this Court to determine whether the photographs and text messages unlawfully seized "significantly direct[ed] the investigation" conducted by the police to the search of defendant's home. United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

O

States v. Chamberlin, 644 F.2d 1262, 1269 (9th Cir. 1980); Dkt. #95 at 5 – 6 (quoting Chamberlin).

On May 3, 2013, the Court held an evidentiary hearing to address whether the photographs and text messages significantly directed the investigation to the search of defendant's home. After considering the testimony presented at the hearing, the Court finds and concludes as follows.

## II. BACKGROUND

The facts underlying this case are known to the parties and set out in detail in the Court's order dated January 22, 2011. Dkt. #53. To provide context for the Court's discussion below, the Court recounts the relevant background events.

On May 27, 2010, at approximately 2:00 AM, Glendale police officer Frank Segura ("Officer Segura") conducted a traffic stop of Alejandro Diego Garcia ("Garcia"). At the time of the stop, Garcia was driving a red truck that belonged to defendant. Garcia informed Officer Segura that he was not the owner of the vehicle, and that he was returning it to his friend "Marcos." A white truck had been following Garcia, and Garcia told Officer Segura that the driver of the truck was going to drive him home after he returned the red truck. Through a computer check of the red truck's registration, Officer Segura confirmed that the truck belonged to defendant, and also learned defendant's home address. Officer Segura also saw that the red truck's navigation system was turned on and programed to direct Garcia to defendant's house.

At some point during the traffic stop, Officer Segura searched Garcia for weapons, and during this search found roughly $4,000 in cash in Garcia's front pocket. Additionally, Garcia informed Officer Segura that he had been arrested for possession of narcotics by the Whittier police, and Officer Segura confirmed this claim with the Whittier police.

Based on this information, Officer Segura conducted a search of the red truck, which, as discussed above, was unlawful. Officer Segura obtained Garcia's cell phone during this search, and while looking through the phone, Officer Segura viewed pictures and text messages relating to the sale of narcotics. Officer Segura then decided to travel to defendant's residence, purportedly to both search the residence for narcotics and determine whether Garcia had permission from defendant to drive the red truck.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

### III.   ANALYSIS

When considering whether evidence should be suppressed under the "fruit of the poisonous tree" doctrine, courts determine "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488 (1963).  To make this determination, the Ninth Circuit has instructed courts that the applicable test is "whether the illegal activity tends to significantly direct the investigation to the evidence in question." Chamberlin, 644 F.2d at 1269.  The government has the burden of demonstrating that evidence is not fruit of the poisonous tree.  Chamberlin, 644 F.2d at 1269.

When determining whether a search or seizure "tends to significantly direct the investigation" to a particular piece of evidence, the focus of the inquiry "is on the causal connection between the illegality and the evidence." Chamberlin, 644 F.2d at 1269.  Suppression is appropriate only if the illegality is the "but for" cause of the discovery of the evidence defendant seeks to suppress.  Segura v. United States, 468 U.S. 796, 815 (1984) ("[O]ur cases make clear that evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence.")  But for causation is not, however, sufficient on its own to justify suppression.  United States v. Bacall, 443 F.2d 1050, 1057 (9th Cir. 1971); United States v. Johns, 891 F.2d 243, 245 (9th Cir. 1989); Hess v. Ryan, 651 F. Supp. 2d 1004, 1041 (D. Ariz. 2009) ("[T]he 'but for' relationship is a necessary but not sufficient condition for evidence to be 'fruit of the poisonous tree.'").  Instead, the issue is whether illegally obtained evidence gave the investigating offers "a substantially greater reason" to conduct the challenged search, or whether the unlawful evidence is the "impetus" for the chain of events leading to the search in dispute.  Johns, 891 F.2d at 245 – 246.

Here, the Court finds that the photographs and text messages illegally seized during the unlawful vehicle search significantly directed the investigation towards defendant's residence, and therefore that the evidence recovered from the residence should be suppressed as fruit of the poisonous tree.  First, the government has not demonstrated that the investigating officers would have gone to defendant's residence solely to determine whether Garcia had permission to drive defendant's truck.  There was no physical evidence that Garcia had stolen the vehicle.  Additionally, Garcia informed the investigating officers that he was friends with the vehicle's owner and was on his way to the owner's house.  These statements were corroborated by the fact that the vehicle's navigation system was turned on and programed to direct the driver to defendant's house, and by the fact that another driver was following Garcia to drive him home after returning the red truck.  Moreover, no evidence revealed a rational basis for doubting whether Garcia had permission to drive the vehicle, particularly in light of the fact that it is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

common practice for individuals to loan cars to their friends. Finally, at the time the investigating officers appeared at defendant's house, it was roughly 5:00 AM. In light of these considerations, it appears that it was the possibility of discovering narcotics that directed the investigating officers to go to defendant's residence.

Second, the evidence recovered from Garcia's cell phone was the impetus driving the officers to search for narcotics at defendant's residence. It is true that the cell phone evidence was not the only evidence that provided reason to believe that Garcia could be involved in the sale of narcotics. Garcia was found with a large amount of cash, and admitted to a recent arrest for possession of narcotics. Upon recovering this evidence, however, Officer Segura did not decide to immediately proceed to defendant's residence to search for narcotics. Instead, he searched the red truck and Garcia's cell phone, and found far more probative evidence of narcotics sales. This evidence included pictures apparently depicting narcotics, and recent text messages suggestive of narcotics transactions. The officers only went to defendant's residence after obtaining this evidence, and this fact, taken in conjunction with the fact that the cell phone evidence was far more probative than the other evidence available to the officers, suggests that the cell phone evidence directed the officers to defendant's residence.

Accordingly, the government has not met its burden of demonstrating that the evidence seized from the unlawful search of Garcia's cell phone was not the fruit of the poisonous tree. Consequently, in contradiction to the Court's original ruling, the Court finds that the evidence obtained from the search of defendant's residence should be suppressed.

## III.    CONCLUSION

In accordance with the foregoing, the Court finds that the evidence seized from defendant's residence should be suppressed.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |